# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

EMILY NESBITT;
ALICE STANLEY:
and JESSICA ADAIR,

    Plaintiffs,

v.                                          No. 3:11-cv-00574
                                             Judge Sharp

WILKINS TIPTON, P.A.              Magistrate Knowles

    Defendant.                           JURY DEMAND

## INITIAL CASE MANAGEMENT ORDER

A Case Management Conference is scheduled to be held in the above-entitled action on Thursday August 4, 2011 at 10:00 am. Pursuant to Local Rule 16.01(d)(1)(b), the parties submit this Proposed Order for entry by the Court.

    **A.**     **STATUS OF SERVICE OF PROCESS AND RESPONSIVE PLEADINGS:** Service of process has been achieved on Defendant. An Answer has been filed by the Defendant. Plaintiff has filed an Amended Complaint that has not been served.

    **B.**     **JURISDICTION:** This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. 2000e *et seq,* and the Tennessee Human Rights Act, T.C.A. 4-21-101 *et seq.* Venue is proper in this Judicial District.

1

### C. BRIEF THEORIES OF THE PARTIES:

**1.    PLAINTIFF:** The defendant, Wilkins Tipton, P.A., is a professional corporation with its principal office located at 4735 Old Canton Road, Jackson, Mississippi. The corporation, through its shareholders, agents and servants renders legal services to its clients. Wilkins Tipton, P.A. has a satellite law office at 5200 Maryland Way, Brentwood, Tennessee. The managing partner/shareholder at this office is Jay McLemore. McLemore is a principal, agent, servant and/or employee of Wilkins Tipton, P.A.

The plaintiffs, at all times hereinafter complained of, were female employees of Wilkins Tipton, P.A. at the Brentwood, Tennessee office in the capacities of para-professional employees. The said Jay McLemore is an attorney and is the direct supervisor of Emily Nesbitt and Alice Stanley. Jessica Adair's supervisor is David M. Eaton.

Plaintiffs would show that during the month of December, 2010 through January, February, March, April, and May 2011 they were repeatedly subjected to sexual harassment by their boss/supervisor Jay McLemore. Additionally, he subjected them to his racial and homophobic language in the workplace. Plaintiffs further aver, as is set forth hereinafter, that the actions of the supervisor Jay McLemore, were pervaded with sexual harassment, discrimination, insults and abuse, all of which were profoundly unpleasant and that those actions interfered with the performance of their respective jobs, creating a work environment so hostile that no reasonable person similarly situated could be expected to endure it. Said acts complained of, *inter alia*, included the following:

a) Intentional and inappropriate touching, brushing, and rubbing up against female employees.

b) Unabashed occasions of fondling his male genitalia in the presence of female employees.

c) Simulating "bouncing female breasts."

d) Inappropriate jokes of a sexual nature and imitating telephone sexual hotline matters.

e) Numerous racist remarks pertaining to African-Americans including Black clients, Black court personnel and Black judges, ridiculing their language using exaggerated ghetto accents. .

Plaintiffs initially reported inappropriate sexual comments and racist remarks by the managing partner at the Brentwood, Tennessee office, Mr. Jay McLemore, to the home office of Wilkins Tipton, Attorneys at Law in Jackson, Mississippi on December 8, 2010.

McLemore's complained-of acts continued, unabated, during February and March 2011. Plaintiff Jessica Adair experienced the intentional and inappropriate touching and rubbing up on her backside by McLemore. After the third such occurrence at the office she related the problem to her husband, Shayne. He went to the office of Wilkins Tipton, confronted McLemore and advised him, "This is going to stop right now!"

Shortly thereafter, rather than taking effective measures to stop the sordid behavior of McLemore, defendant retaliated by the installation of twelve video cameras some of which were aimed directly at the plaintiffs in their work stations.

Defendant's female employees felt this constant intrusion and scrutiny to be oppressive, humiliating and a calculated adverse action against them. They inquired of the corporate Jackson, Mississippi office as to why they had been installed. They were informed that they were to "protect you and the firm and to protect the attorneys from irate husbands storming in and threatening lawyers." These surveillance cameras remain in place as of the filing of this action as a daily aggravation and retaliatory dissemblement.

Plaintiffs aver that the adverse actions by the defendant constituted "increased surveillance" as contemplated by the EEOC as retaliation and in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act.

Plaintiffs aver that McLemore's sexual harassment and racist conduct continued through the months of February and March of 2011. Initially, the plaintiffs thought that the first incident of his inappropriate touching and rubbing might have been just accidental even though there was no "excuse me" or apology. When it occurred time and again to the plaintiffs and other female employees at the office it was obvious to them that the conduct was deliberate and intentional. Plaintiffs aver that McLemore's conduct was offensive, disgusting, and cowardly. They felt degraded and humiliated repeatedly by McLemore.

Defendant was made aware of numerous sexually offensive acts by Mr. McLemore during the time period from December 2010 through May 2011. On one of these occasions, while the female employees were in the conference room of the Brentwood office, McLemore asked if anyone had seen the new "Sex in the City 2" movie. He proceeded to tell everyone present that the only reason a man would watch

that movie is to see the breasts of one of the characters. He then proceeded to use his hands to simulate bouncing breasts time and again. Ms. Adair had to put her hand up in a "stopping" motion and told him to "Please stop, stop, that's enough..."

On another occasion during this December-May period, at a firm lunch on December 6, 2010, in the conference room before the food was served, Ms. Adair suggested that while they were waiting to eat they should play some Christmas music. McLemore said he knew where Christmas music was on the satellite, and dialed in a channel that was a pay-per-view pornography channel. He told them there was a porn number he knew, said, "Hey, I will show ya'll." He was told "we don't need to know" and he finally gave up.

Plaintiffs would aver that McLemore would make innumerable racist remarks to the plaintiffs and other office personnel concerning some of his African-American clients, and African-American judges ridiculing their language by imitating what he believed to be ghetto terminology and accents. On repeated occasions he would tell the office personnel that he had "to move out of Jackson because it had become 80% Black."

On or about March 30, 2011, defendant commenced a pretextual investigation conducted by one of its partners-in-interest, Mr. G.W. Flinn from the Jackson, Mississippi office of Wilkins Tipton.

Rather than undertaking a *bona fide* inquiry of the plaintiffs' concerns that would insure that defendant's female employees would no longer be subjected to harassment, Mr. Flinn informed the plaintiffs subsequent to his interviews with said plaintiffs and his partner, Jay McLemore, that their complaints were simply a "failure to communicate" and that "someone thought that they had been inappropriately touched by someone else."

5

Furthermore, "No one had been inappropriately touched…it was simply a 'small space issue'."

Plaintiffs left that meeting with the clear belief that the Wilkins Tipton "investigator" believed their complaints to be silly, baseless, and fabricated as pertaining to all of the McLemore events.

The plaintiffs left that meeting degraded and dejected. They felt the message clearly to be that the firm would protect McLemore and any further complaints were to be kept to themselves.

Contrary to Mr. Flinn's corporate self-serving analysis, the plaintiffs aver that they are wives, mothers, and legal professionals not given to frivolous, trumped-up charges regarding complaints of lechery and racism by their employer.

Plaintiffs aver that they repeated all of the above-mentioned incidents to the supervisor/senior attorneys at the firm on at least three separate occasions between January and May of 2011. In May of 2011, after relating continuing harassment, plaintiff Emily Nesbitt was told by founding partner Joseph Wilkins that if she was upset/fed up with McLemore's aggressive or offensive conduct she should find another job. Plaintiff Alice Stanley was told by Mr. Flinn that if she didn't like the practices of their firm, and could not handle the situation "it might not be a good fit," and she should look for a new job.

Plaintiffs would show that all of the described acts of Jay McLemore were unwelcomed, severe, and pervasive constituting sexual harassment and creating a hostile work environment at Wilkins Tipton, Attorneys at Law, Brentwood, Tennessee. The

discrimination, insults, and abuse were profoundly unpleasant and interfered with the performance of their respective jobs.

Plaintiffs allege that defendant's management failed timely and effectively to terminate the discriminatory and illegal activities in their firm as required by law.

By mid-May of 2011, the plaintiffs felt helpless to stop McLemore and that they would have to tolerate and endure his offensive, disgusting, and perverted acts and the failures of the Jackson hierarchy or risk losing their livelihoods.

Plaintiffs aver that the defendant engaged in discriminatory and retaliatory practices with reckless indifference to plaintiffs' federally protected rights warranting an award of punitive damages. Both defendant and McLemore as an individual acted with malice, oppression, evil motives, conscious indifference, and with recklessness, as aforesaid. These wrongful acts were and are intentional and were acts implying disregard of social obligations.

Plaintiffs aver that the defendant, by and through its employees, are liable for outrageous conduct. The distress of the plaintiffs' work environment was and is so severe that no reasonable person could be expected to endure it. Plaintiffs would further aver that their distress was continuous over the period of time they have been employed and is not transient or trivial. The emotional distress of the plaintiffs has reached a point where physical manifestations have appeared. Plaintiffs have suffered physical manifestations of mental insult and injury proximately caused by defendant's unlawful acts.

2. **Defendant**: Defendant denies the Plaintiffs' allegations as set forth in the Complaint (and restated above) and in the unserved Amended Complaint. Defendant

denies that Plaintiffs can state a claim under Title VII or the Tennessee Human Rights Act for sexual harassment or retaliation. Defendant promptly responded to complaints made by the Plaintiffs and took prompt remedial action reasonably calculated to end any complained of behavior. All three Plaintiffs are presently employed by Defendant and have suffered no adverse job action. In addition, the security cameras that were installed in Defendant's Brentwood Office in late April 2011 have been positioned to cover the entire office, including the offices of the Attorneys who work in the office.  Defendant further submits that Plaintiffs claims are legally insufficient to state a claim for relief, including the "Outrageous Conduct" claim set forth in the Amended Complaint. Any claims for compensatory or punitive damages under Title VII are subject to the caps contained in 42 USC § 1981(b)(3). Moreover, Plaintiffs are not entitled to recover punitive damages under the Tennessee Human Rights Act. Defendant at all times acted in good faith with respect to Plaintiffs' employment, therefore, Plaintiffs would not be entitled to recover punitive damages under Title VII even if liability could be established. Even if Plaintiffs were able to establish a prima face case of sexual harassment, Plaintiffs' claims should be dismissed, since the Defendant exercised reasonable care to prevent and correct promptly any alleged harassing behavior, and (b) that the Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

  **C.**  **ISSUES RESOLVED:** Jurisdiction

  **D.**  **ISSUES STILL IN DISPUTE:**

All other issues are in dispute.

**E. MANDATORY INITIAL DISCLOSURES:** Pursuant to Federal Rule of Civil Procedure 26(a)(1), all parties must make their initial disclosures **within 30 days after the initial case management is entered in this cause.**

**F. DISCOVERY:** The parties shall complete all written discovery and depose all fact witnesses on or before **February 28, 2012**. Discovery is not stayed during dispositive motions, unless ordered by the Court. No motions concerning discovery are to be filed until after the parties have conferred in good faith and are unable to resolve their differences. Discovery-related Motions are due on or before March 6, 2012.
.

**G. MOTIONS TO AMEND:** The parties shall file all Motions to Amend on or before **August 31, 2011.**

**H. DISCLOSURE OF EXPERTS:** The Plaintiff shall disclose her expert by **November 15, 2011**. The Defendant shall identify and disclose all expert witnesses and reports on or before **December 15, 2011.**

**I. DEPOSITIONS OF EXPERT WITNESSES:** Deposition of experts shall be completed by **February 28, 2011.**.

**J. DISPOSITIVE MOTIONS:** The parties shall file all dispositive motions on or before **March 31, 2012**. Responses to dispositive motions shall be filed within <u>thirty (30) days after service</u>. Optional replies shall be filed within ten (10) days after service of the response. Briefs shall not exceed <u>20 pages</u>.

**K. TRIAL:** This case is set for trial on September 4, 2012, at 9:00 a.m before the Honorable Kevin H. Sharp. The pretrial conference is set for August 13, 2012, at 1:30 p.m.

**L. SETTLEMENT POTENTIAL**: Settlement has yet to be attempted. Should progress toward settlement not be made, the parties may raise the issue of a settlement conference with the Court.

**M. SPECIAL PROCEDURES FOR HANDLING PRIVILEGED INFORMATION:** The parties believe that there may be documents and other information that may be produced in discovery that are commercially sensitive or otherwise confidential in nature. The parties will work together to agree on a form of protective order with a mechanism for the appropriate protection of such information and for filing certain documents under seal when necessary, and submit the proposed protective order to the court for its approval.

**N. SCHEDULING OF ADDITIONAL CASE MANAGEMENT CONFERENCES:** Any party may request additional case management conferences as necessary.

**It is so ORDERED.**

Date: _____    _____
                            Honorable.E..Clifton.Knowles
                            United States Judge